Nos. 23-10739, 23-10813

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ANDREW JOSEPH, JR., as natural father, next friend, and personal
representative of the Estate of Andrew Joseph, III, deceased,

Appellant/Cross-Appellee,

v.

CHAD CHRONISTER, in his official capacity as Sheriff of Hillsborough
County, and MARK CLARK, in his individual capacity,

Appellees/Cross-Appellants.

On Appeal from the United States District Court for the
Middle District of Florida, Tampa Division
No. 8:16-cv-00274-MSS-TBM

BRIEF OF APPELLANT ANDREW JOSEPH, JR.

Christopher S. Anulewicz
Georgia Bar No. 020914
canulewicz@bradley.com
**BRADLEY ARANT BOULT
CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Facsimile: (404) 868-2010

Guy Bennett Rubin
Florida Bar No. 691305
grubin@rubinandrubin.com
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida 34995
Telephone: (772) 283-2004
Facsimile: (772) 283-2009

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, the undersigned counsel for Plaintiff/Appellant Andrew Joseph, Jr. hereby discloses the following trial judges, attorneys, persons, associations of persons, firms, and partnerships or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Adams and Reese LLP (Attorneys for Hillsborough County School Board)

2. Anulewicz, Christopher S. (Attorney for Plaintiff)

3. Balch & Bingham (Attorneys for Plaintiff)

4. Boos, Robert W. (Attorney for Hillsborough County School Board and Hillsborough County School District)

5. Borland, Marie A. (Attorney for Defendants Chad Chronister and Mark Clark)

6. Bower Rodriguez, P.A. (Former Attorneys for Plaintiff)

7. Brown, Christopher, E. (Attorney for Defendants Chad Chronister, Henry Echenique, Mark Clark, and Stephen Jones)

8. Chambers Pilon (Former Attorneys for Florida State Fair Authority)

9. Chester, Adrian (Defendant)

10. Chronister, Chad (Defendant/Appellee)

11. Clark, Mark (Defendant)

12. Clark, Thea G. (Former Attorneys for Defendants Chad Chronister, Henry Echenique, Mark Clark, John Does 1-X, and Stephen Jones)

13. Collier, Kathryn E. (Attorney for Florida State Fair Authority)

14. Cohen, Barry A. (Former Attorney for Plaintiff)

15. Conahan, Sean M. (Attorney for Florida State Fair Authority)

16. Darken, Kevin J. (Former Attorney for Plaintiff)

17. Does, John 1-X (Defendant)

18. Echenique, Henry (Defendant)

19. Florida State Fair Authority (Defendant)

20. Fulmer LeRoy & Albee, PLLC (Attorneys for Florida State Fair Authority)

21. Fulton, Robert M. (Attorney for Defendants Chad Chronister and Mark Clark)

22. Gaines, Michael W. (Former Attorney for Plaintiff)

23. Gordillo, Jason G. (Former Attorney for Chad Chronister, Henry Echenique, Mark Clark, Stephen Jones, and Adrian Chester)

24. Harrison, Chelsea C. (Attorney for Hillsborough County School Board and Hillsborough County School District)

25. Hill, Ward & Henderson, P.A. (Attorneys for Defendants Chad Chronister and Mark Clark)

26. Hillsborough County School Board (Defendant)

27. Hillsborough County School District (Defendant)

28. Hillsborough County Sheriff's Office (Attorneys for Defendants Chad Chronister, Henry Echenique, Mark Clark, and Stephen Jones)

29. Jones, Stephen (Defendant)

30. Joseph, Jr., Andrew (Plaintiff/Appellant)

31. Kirsheman, April S. (Attorney for Defendants Chad Chronister, Henry Echenique, Mark Clark, and Stephen Jones)

32. Lieser Skaff Alexander (Attorneys for Hillsborough County School Board)

33. Litchfield Cavo, LLP (Former Attorneys for Defendant Chad Chronister, Henry Echenique, Mark Clark and Stephen Jones)

34. Luks Santaniello Petrillo & Jones, LLC (Former Attorneys for Florida State Fair Authority)

35. Manuel Menendez, Esq. (Mediator)

36. Mazuchowski, Susan K. (Former Attorney for Florida State Fair Authority)

37. McCoun III, The Hon. Thomas B. (Magistrate Judge)

38. Menendez, Jr., Manuel (Mediator)

39. Murman, James A. (Attorney for Hillsborough County School Board and Hillsborough County School District)

40. Norbraten, Todd M. (Former Attorney for Plaintiff)

41. Oliver, Deborah H. (Attorney for Hillsborough County School Board and Hillsborough County School District)

42. Perotti, Albert M. (Former Attorney for Defendant Chad Chronister, Henry Echenique, Mark Clark and Stephen Jones)

43. Pilon, Carrie Lambeth (Former Attorney for Florida State Fair Authority)

44. Pinellas County Sheriff's Office (Former Attorneys for Defendant Chad Chronister, Henry Echenique, Mark Clark and Stephen Jones)

45. Porcelli, Hon. Anthony E. (Magistrate Judge)

46. Roper & Roper, P.A. (Attorneys for Florida State Fair Authority)

47. Roper, Donovan A. (Attorney for Florida State Fair Authority)

48. Rubin & Rubin (Attorneys for Plaintiff)

49. Rubin, Guy Bennett (Attorney for Plaintiff)

50. Scriven, Hon. Mary S. (United States District Judge)

51. Shimberg, Robert A. (Attorney for Defendants Chad Chronister and Mark Clark)

52. Silloway, Patrick N. (Attorney for Plaintiff)

53. Todd Foster Law Group, LLC (Former Attorneys for Plaintiff)

54.   Tuite, Hon. Christopher P. (Magistrate Judge)

55.   Weekley Schulte Valdes Murman Tonelli (Attorneys for Hillsborough County School Board)

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule 28-1(c), Appellant/Cross-Appellee Andrew Joseph, Jr., as natural father, next friend, and personal representative of the Estate of Andrew Joseph, III ("Andrew"), deceased, requests oral argument.

Andrew was just 14 years old when he was killed on February 7, 2014. Andrew was attending the Florida State Fair along with countless other children who had received free tickets to attend the fair's "Student Day". A friend's mother dropped Andrew and four other children off at Gate 3 of the fair where he was to be picked up later that day. Andrew never made it back.

Andrew was ejected from the Florida State Fair into a clearly dangerous area and left to fend for himself, solely for picking up and trying to return his friend's baseball cap, which had fallen to the ground when sheriff's deputies were forcibly removing the friend and others from the fair's midway. More specifically, when Andrew approached his friend to return his baseball cap, deputies of the Hillsborough County Sheriff's Office ("HCSO"), including Appellee Mark Clark, seized Andrew without probable cause, detained him for 44 minutes, and then drove him to a point outside the fairgrounds near the dangerous Interstate 4, where they released this child with no supervision, assistance, or guidance and without notifying his parents or releasing him into the custody of his parents or other adult as required by Florida law. Left on his own and not knowing how to get back to the other side

of the fair to meet his ride home at Gate 3, and threatened with arrest if he came back onto fair property, Andrew tried to get back by running across Interstate 4, where he was struck by a vehicle and killed.

On behalf of his son, Mr. Joseph filed this action under 42 U.S.C. § 1983 and Florida state law against Hillsborough County Sheriff Chad Chronister in his official capacity and Deputy Sheriff Mark Clark in his individual capacity, for seizing and detaining Andrew without probable cause and for wrongfully causing Andrew's death. Clark's seizure of Andrew without probable cause violated the Fourth and Fourteenth Amendments to the United States Constitution, and HCSO's conduct violated its duties under Florida law to exercise reasonable care after taking Andrew into custody and requiring it to notify Andrew's parents when they took him into custody and to release Andrew only to his parents or to another responsible adult.

Mr. Joseph requests oral argument to engage in an important discussion of the issues raised in this appeal. This Court's decision-making process will be greatly aided by oral argument of the issues, in particular to discuss the evidence presented at trial and the legal authority establishing, as a matter of law, that Clark did not have probable cause to seize Andrew and that the District Court erred in holding otherwise.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ......................................................................C1

STATEMENT REGARDING ORAL ARGUMENT ........................................... S1

TABLE OF CITATIONS ................................................................................... ii

I.     JURISDICTIONAL STATEMENT .................................................................1

III.   STATEMENT OF THE CASE ........................................................................1

     A.    Nature of the Case ..............................................................................1

     B.    Course of Proceedings and Dispositions in the Court Below ..............3

     C.    Statement of Facts ..............................................................................5

     D.    Standards of Review..........................................................................11

IV.   SUMMARY OF THE ARGUMENT .............................................................12

V.    ARGUMENT AND CITATION OF AUTHORITY ....................................13

     A.    Mr. Joseph Is Entitled to Judgment as a Matter of Law that Clark Lacked Probable Cause to Seize Andrew ...........................................13

     B.    Mr. Joseph Is Entitled to a New Trial on Issues Remaining as to His Section 1983 Claim Against Clark ...............................................26

VI.   CONCLUSION..............................................................................................27

CERTIFICATE OF COMPLIANCE.......................................................................28

CERTIFICATE OF SERVICE ...............................................................................29

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Bezzaz v. Moore*,
  No. 6:21-cv-528-JA-DAB, 2022 WL 4290709 (M.D. Fla. Sept. 16,
  2022) ...................................................................................................... 18

*Brown v. City of Huntsville*,
  608 F.3d 724 (11th Cir. 2010) .............................................................. 24

*Brown v. R.J. Reynolds Tobacco Company*,
  38 F.4th 1313 (11th Cir. 2022) ............................................................ 11

*Garmon v. Lumpkin County*,
  878 F.2d 1406 (11th Cir. 1989) ........................................................... 16

*Gray v. Kohl*,
  568 F. Supp. 2d 1378 (S.D. Fla. 2008) ................................................ 25

*Johnson v. United States*,
  333 U.S. 10 (1948) ................................................................................ 24

*Joseph v. Chronister*,
  No. 20-11073, 2021 WL 4739608
  (11th Cir. Oct. 12, 2021) ........................................... 4, 14, 22, 25

*Joseph v. Gee*,
  708 Fed. Appx. 642 (11th Cir. 2018) ..................................................... 3

*Levin v. City of Palm Beach Gardens City Attorney's Office ex rel.
  Tatum*,
  303 Fed. Appx. 847 (11th Cir. 2008) ............................................ 11, 15

*Lu Jing v. State*,
  316 So. 3d 724 (Fla. 4th DCA 2021) .................................................... 17

*Luke v. Gulley*,
  50 F.4th 90 (11th Cir. 2022) ................................................................ 16

*McGinnis v. American Home Mortgage Servicing, Inc.*,
817 F.3d 1241 (11th Cir. 2016) ...................................................11, 12

*McMillian v. Monroe County*,
520 U.S. 781 (1997).........................................................................3

*Reynolds v. General Motors Corp.*,
390 Fed. Appx. 961 (11th Cir. 2010)..............................................11

*Scott v. Postmaster General United States Postal Service*,
818 Fed. Appx. 914 (11th Cir. 2020)..............................................12

*Swint v. City of Wadley*,
51 F.3d 988 (11th Cir. 1995) ....................................................23, 24

*Wallace v. Smith*,
297 Fed. Appx. 915 (11th Cir. 2008)..............................................16

*Whiteley v. Warden, Wyo. State Penitentiary*,
401 U.S. 560 (1971).......................................................................17

*Wong Sun v. United States*,
371 U.S. 471 (1963).......................................................................24

**Statutes**

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

42 U.S.C. § 1983 ......................................................................*passim*

42 U.S.C. § 1988(b) ........................................................................26

Fla. Stat. § 616.185 ...........................................................15, 17, 23

Fla. Stat. § 901.15(1).......................................................................17

Fla. Stat. § 985.101(3).......................................................................8

Fla. Stat. § 985.115(2)(a) ..................................................................9

**Other Authorities**

Eleventh Circuit Local Rule 26.1-1 ............................................................1

Fed. R. Civ. P. 50(a)(1) .............................................................................11

Fed. R. App. P. 26.1 ...................................................................................1

Eleventh Circuit Local Rule 28-1(c) ..........................................................1

Fed. R. Civ. P. 50 .................................................................................11, 26

Fed. R. Civ. P. 59(a).................................................................................12

United States Constitution Fourth and Fourteenth Amendments ...............2

# I.    JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it is a civil action arising under the Constitution and laws of the United States.  This Court has appellate jurisdiction over Mr. Joseph's appeal pursuant to 28 U.S.C. § 1291, because it is from a final order of the District Court entered on February 3, 2023 [Doc. 461], denying Plaintiff's Motion for Judgment as a Matter of Law and Motion for New Trial. The Plaintiff's Notice of Appeal was timely filed on March 6, 2023.  [Doc. 464]

# II.   STATEMENT OF ISSUES

Whether the District Court erred in holding the evidence presented at trial was legally sufficient to support the jury's finding that Clark had probable cause to seize Andrew and, based on that holding, in denying Plaintiff's Motion for Judgment as a Matter of Law and Motion for New Trial.

# III.  STATEMENT OF THE CASE

## A.    Nature of the Case

Fourteen-year-old Andrew Joseph, Jr. ("Andrew") was killed after he was unconstitutionally detained and ejected from the Florida State Fair by Hillsborough County Sherriff's Deputy, Defendant Mark Clark.  At trial, the evidence irrefutably established: (1) Clark detained Andrew[1]; (2) a witness saw Andrew running

---

[1] As noted below, this was something Clark admitted in the pre-trial order and something the evidence at the trial established.  During the trial, Clark attempted to

sometime prior to his detention by Clark; (3) there was no evidence Andrew was running at the time he was detained by Clark; (4) Defendants admitted simply "running" at the Florida State Fair, without some other element of impermissible conduct—e.g. pushing or shoving other Fair attendees—was not "disorderly conduct" sufficient to create probable cause for a detention; and (5) there was no Fair rule or law precluding "running" by children attending the Fair. In sum, there was no evidence that Andrew was doing *anything* that justified Clark's detention of him—other than being in proximity to others who were also detained. Despite this, and despite overwhelming Eleventh Circuit law on point, the jury found that Clark did not unconstitutionally detain Andrew. That finding, affirmed by the district court despite prior rulings to the contrary, must be reversed and a new trial ordered. The justification for affirmance was based on disconnected leaps of logic and cannot support the verdict in Clark's favor.

Mr. Joseph asserted a claim under 42 U.S.C. § 1983 against Clark and a wrongful death claim under Florida state law against HCSO arising from the death of his son, Andrew, during Student Day at the Florida State Fair on February 7, 2014. After a jury trial, the District Court denied Mr. Joseph's Motion for Judgment as a Matter of Law that Clark lacked probable cause to seize Andrew from the fair's

---

distance himself from this admission, something neither the law nor the facts allowed.

midway and eject him from the fair, without ever notifying his parents as required by Florida law. The evidence presented at trial was legally insufficient to support the jury's finding that Clark had probable cause to seize Andrew.

## B.    Course of Proceedings and Dispositions in the Court Below

After filing an initial Complaint and two Amended Complaints, and after an initial review by this Court (*see Joseph v. Gee*, 708 Fed. Appx. 642 (11th Cir. 2018)) [Docs. 126, 128], Mr. Joseph filed his Third Amended Complaint [Doc. 143] asserting a state law wrongful death claim against HCSO Sheriff Chad Chronister in his official capacity (Count I),[2] a state law wrongful death claim against the Florida State Fair Authority ("FSFA") for vicarious liability (Count II), a state law wrongful death claim against FSFA for direct liability (Count III), a claim against Chronister in his official capacity under 42 U.S.C. § 1983 (Count IV), and claims under 42 U.S.C. § 1983 against Appellee Deputy Sheriff Mark Clark and Deputies Stephen Jones and Henry Echenique in their individual capacities (Counts V-VII).

Defendants filed motions for summary judgment. [Docs. 226, 230] The District Court granted in part and denied in part Defendants' motions. [Doc. 283] The District Court granted HCSO's motion as to Mr. Joseph's Section 1983 claim

---

[2] Because an official capacity suit against a county sheriff is effectively an action against the governmental entity he represents, Appellee Chad Chronister is referred to herein as "HCSO." *See McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997).

(Count IV), ruling there was no evidence showing HCSO's alleged failure to train or supervise its officers reflected its deliberate indifference to constitutional rights, and it granted summary judgment to Deputies Jones and Echenique (Counts V and VII). The District Court denied Defendants' motions for summary judgment in all other respects, ruling in particular that Defendants were not entitled to qualified immunity or sovereign immunity, and this Court affirmed. *See Joseph v. Chronister*, No. 20-11073, 2021 WL 4739608 (11th Cir. Oct. 12, 2021).

On September 9, 2022, Mr. Joseph settled his claims against FSFA. [Doc. 393] Beginning on September 12, 2022, Mr. Joseph's wrongful death claim against HCSO and Section 1983 claim against Clark were tried before a jury. At the close of Defendants' evidence, Mr. Joseph moved for judgment as a matter of law as to his Section 1983 claim against Clark, arguing no reasonable jury could conclude Clark had probable cause to seize Andrew on February 7, 2014, at the Florida State fair. *See* Doc. 459 at 83:18-88:6. The District Court determined Clark had seized Andrew, but it held Mr. Joseph's oral motion regarding probable cause in abeyance pending the jury verdict. *See id.* at 101:6-10, 103:24-104:5, 114:20-115:10, 116:7-9.

On September 22, 2022, the jury returned its verdict in favor of Mr. Joseph on his state law wrongful death claim against HCSO and in favor of Clark on Mr. Joseph's Section 1983 claim. [Doc. 438] Mr. Joseph renewed his motion for

judgment as a matter of law. On September 23, 2022, the District Court ordered Mr. Joseph to file a brief on the issue whether Clark had probable cause to seize and detain Andrew. [Doc. 441]

On October 7, 2022, Mr. Joseph filed his Brief in Support of Motion for Judgment as a Matter of Law and Motion for a New Trial [Doc. 443], requesting the District Court to enter judgment as a matter of law that Clark lacked probable cause to seize and detain Andrew and therefore violated Andrew's Fourth Amendment rights and, if the District Court did so, to order a new trial limited to the issues of proximate cause, damages, and attorneys' fees with regard to Mr. Joseph's Section 1983 claim against Clark.

On February 3, 2023, the District Court issued its order denying Mr. Joseph's Motion for Judgment as a Matter of Law and Motion for New Trial. [Doc. 461] Mr. Joseph and HCSO timely filed notices of appeal. [Docs. 464, 468] By Order dated April 10, 2023, this Court's Clerk consolidated the two appeals. [Dkt. 16]

### C. <u>Statement of Facts</u>

This action arises from the death of Mr. Joseph's 14-year-old son, Andrew, who attended Student Day at the Florida State Fair on February 7, 2014. Student Day at the fair was a well-attended annual event for which students at area schools were issued free tickets. *See* Doc. 453 at 71:21-72:6. Aware of the great number of students who typically attend Student Day, many without their parents, HCSO

provided deputies and adopted policies for dealing with persons suspected of committing crimes at the fair, ranging from ejectment to formal arrest. *See* Doc. 454 at 48:5-49:8, 50:2-6, 50:15-51:3, 51:24-52:8, 53:5-5-9, 54:1-13.

Around 6:30 p.m. on February 7, 2014, Andrew and four other children were dropped off at the Gate 3 entrance to the fair by the mother of one of the children. *See* Doc. 457 at 167:11-19, 168:15-169:3, 171:5-7. The fair's midway was crowded in places, and at some point a disturbance occurred involving several attendees – but not Andrew. *See* Doc. 453 at 138:21-22, 189:11-13, 99:6-9, 104:24-25, 105:11-107:23; Doc. 456 at 182:13-183:23. HCSO officers detained and removed from the midway several children involved in the disturbance. *See* Doc. 453 at 99:6-9, 104:6-14; Doc. 458 at 37:9-11.

Corey Thornton was with Andrew all night, and they were on the midway talking to someone when they saw Andrew's friend Robert Pearson and another friend walking past while being held by deputies. *See* Doc. 456 at 77:8-17, 80:16-20, 83:22-23, 158:21-24. Andrew saw Robert's ball cap fall off his head as he was "slammed" to the ground by a deputy in an area of the midway that was not crowded. *See* Doc. 456 at 80:16-20, 81:22-82:7, 181:2-11, 187:7-11. Andrew picked up Robert's cap and walked up to Robert to return his cap, and Andrew asked the deputies what was going on. *See* Doc. 456 at 78:9-10, 78:19, 80:16-20, 81:16-17, 84:10-15, 144:18, 181:7-9, 181:21. Corey was the only eyewitness to Andrew's

actions immediately before and as he approached the deputies who had custody of Robert – he was "not even two steps behind [Andrew]" – and he testified consistently at trial that Andrew **walked** up to them. *See* Doc. 456 at 78:9-10, 78:19, 81:16-21, 144:15-18.

A deputy then asked Robert if he knew Andrew, Robert answered he did, and the deputy told Andrew to come with them. *See* Doc. 456 at 181:9-14, 187:17-22. Corey and Andrew were then grabbed by deputies, and Corey thought about trying to get away, but Andrew told him not to resist and just to go with the deputies. *See* Doc. 456 at 84:24-85:8.

HCSO Deputy Clark took Andrew from the midway to a processing area on the fairgrounds where all seized and detained children were held. *See* Doc. 335 at 11; Doc. 459 at 103:17-104:6. At the processing area, HCSO Deputy Henry Echenique filled out an ejection form for Andrew at Clark's instruction and based on information Clark provided to him. *See* Doc. 453 at 170:21-171:12; Ex. 42. The ejection form's alleged basis for Andrew's ejection from the fair was "running through the midway causing disorderly conduct," which is what Clark told Echenique to write on the form. *See* Doc. 453 at 103:12-18, 145:3-5, 172:21-173:2; Ex. 42. Echenique never saw Andrew running through the midway or causing disorderly conduct, however; he wrote that on Andrew's ejectment form at Clark's instruction. *See* Doc. 453 at 170:7-16. Clark did not recall instructing Echenique to

fill out Andrew's ejection form at all, let alone the factual underpinning for the legal conclusion of "disorderly conduct." *See* Doc. 453 at 103:21-104:2.

In fact, Clark does not recall Andrew at all from that night – he does not recall anything Andrew did that night, he does not know that Andrew was running on the midway or causing disorderly conduct, and he does not know why he seized Andrew and took him from the midway. *See* Doc. 453 at 99:23-24, 103:4-104:2, 115:16-19, 129:11-20, 145:14-21.[3] Thus, neither Clark nor any other HCSO officer actually witnessed Andrew running, being disruptive or disorderly, or otherwise violating any law or fair rule before they seized him on the midway, and there is no evidence HCSO did any investigation into Andrew's alleged disorderly conduct while he was detained and in its custody.

Andrew was in the custody of HCSO for approximately 44 minutes, beginning at 8:00 p.m. *See* Doc. 459 at 103:17-25. HCSO officers never attempted to contact Andrew's parents after they took him into custody, as required by Fla. Stat. § 985.101(3). *See* Doc. 453 at 76:14-78:3, 90:22-91:5. During Andrew's time in the processing area, he was searched and officers ran a background check on him to ensure he was not wanted, missing, or endangered, and then photographed him. *See*

---

[3] Sergeant Scott Bell, who was present on the midway, similarly testified he had no knowledge of Andrew's actions and did not even observe Andrew at all. *See* Doc. 458 at 48:18-20, 55:2-11. These deputies do not recall Andrew because Andrew was not doing anything wrong.

Doc. 453 at 88:16-20, 89:7-17; Doc. 456 at 90:3-25.  Andrew and the other children were not permitted to leave the processing area, which was enclosed by a fence, and they were surrounded by deputies and officers in uniform and with badges, side arms, and/or tasers.  *See* Doc. 453 at 86:4-13; Doc. 456 at 87:12-13, 89:3-10.  Andrew twice asked Echenique if he could speak to Clark, but Clark refused Andrew's request, saying he was too busy.  *See* Doc. 453 at 173:24-174:18.

Andrew, Corey, and other children were then loaded onto a windowless HCSO transport van and driven from the processing area to a drop-off point outside the fair's Gate 4, near Orient Road and adjacent to Interstate 4.  *See* Doc. 456 at 94:18-95:4, 96:22-24, 98:2-3, 190:13-16, 192:15-193:9.  This was far from Gate 3, where Andrew was initially dropped off at the fair.  HCSO officers did not release Andrew from their custody to his parents or to another responsible adult, as required by Fla. Stat. § 985.115(2)(a), and they provided him with no supervision, guidance, or assistance.  *See* Doc. 453 at 175:6-8; Doc. 456 at 106:16-25, 192:9-14.

After exiting the HCSO transport van, Andrew, Corey, and the other ejected children walked to Gate 4 and stayed there for some time.  *See* Doc. 255 ¶ 13; Doc. 456 at 106:5-11, 111:7-23, 129:18-20.  Andrew did not call his parents while waiting at Gate 4. Doc. 255 ¶ 14.

Andrew and Corey asked an HCSO deputy near Gate 4 if they could reenter the fairgrounds to walk to the other side of the fair to meet their ride home at their

prearranged pick-up point at Gate 3. *See* Doc. 456 at 133:11-134:11. The HCSO deputy refused their request and told them he could arrest them for trespassing. *See* Doc. 456 at 133:18-134:1, 159:7-10. The deputy also told them, wrongly, that the only thing separating them from the fair's main gate was the interstate. *See* Doc. 456 at 134:7-1, 159:12-13.

So Andrew and Corey, who was only 12 years old at the time, were left alone to fend for themselves. Given no other options in this dangerous situation, and not knowing how to get to their pick-up point, Andrew and Corey walked down the Orient Road sidewalk and under I-4 to the Hard Rock Casino, which is directly across I-4 from the fairgrounds. *See* Doc. 255 ¶ 16; Doc. 456 at 134:21-135:1, 161:2-11. Apparently realizing they were now on the wrong side of I-4 from the fair, Andrew and Corey ran directly across I-4 from the Hard Rock Casino toward the fair. *See* Doc. 255 ¶ 17; Doc. 456 at 136:9-12, 163:1-2. After Andrew received a phone call from a friend, Andrew told Corey they had to turn around, so they ran back across I-4 toward the casino in an apparent attempt to backtrack to the Orient Road sidewalk and return to Gate 4. *See* Doc. 255 ¶¶ 17, 18; Doc. 456 at 135:3-5, 137:1-17. Andrew was struck and killed by a vehicle on I-4 at approximately 10:43 p.m. *See* Doc. 255 ¶ 18. Corey made it safely to the casino side of I-4 and returned to Gate 4 via the Orient Road sidewalk. *See* Doc. 456 at 137:23-138:3, 139:4-14.

## D.    **Standards of Review**

This Court reviews *de novo* a district court's denial of a Rule 50 motion for judgment as a matter of law. *See Reynolds v. General Motors Corp*., 390 Fed. Appx. 961, 962 (11th Cir. 2010). Judgment as a matter of law under Rule 50(a) is warranted "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue ...." Fed. R. Civ. P. 50(a)(1); *see also Brown v. R.J. Reynolds Tobacco Company*, 38 F.4th 1313, 1323 (11th Cir. 2022) (court may grant judgment as a matter of law where "there is no material conflict as to the evidence and … no reasonable juror could agree to the verdict"). "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under 50(a)." *McGinnis v. American Home Mortgage Servicing, Inc*., 817 F.3d 1241, 1254 (11th Cir. 2016) (punctuation omitted). "Although [the court] look[s] at the evidence in the light most favorable to the non-moving party [Clark here], the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Levin v. City of Palm Beach Gardens City Attorney's Office ex rel. Tatum*, 303 Fed. Appx. 847, 850 (11th Cir. 2008) (quoting *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000)).

This Court reviews the denial of a Rule 59(a) motion for a new trial for an abuse of discretion. *See Scott v. Postmaster General United States Postal Service*, 818 Fed. Appx. 914, 915 (11th Cir. 2020). Under Rule 59(a), the court may grant a new trial "if in the court's opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *McGinnis*, 817 F.3d at 1254 (punctuation omitted) (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). "Although a trial judge cannot weigh the evidence when confronted with a motion for judgment notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence." *Id.* at 1254-55 (punctuation omitted) (quoting *Rabun v. Kimberly–Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Id.* at 1255 (quoting *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982)).

## IV.  **SUMMARY OF THE ARGUMENT**

The District Court's Order denying Mr. Joseph's Motion for Judgment as a Matter of Law and for a New Trial should be reversed because there was no legally sufficient evidentiary basis for the jury's finding that Clark had probable cause to believe Andrew had committed, was committing, or was about to commit an offense

or that a reasonable officer in the same circumstances and possessing the same knowledge as Clark could have believed probable cause existed to seize, detain, and eject Andrew. The evidence to which the District Court points as supporting a reasonable inference that Clark witnessed Andrew running on the midway is simply not legally sufficient to support it. In fact, the reasonableness of any such inference is refuted by the testimony of Corey Thornton – the only eyewitness to Andrew's actions – that Andrew **walked**, and did not run, up to the deputies to return Robert's cap. No HCSO deputy and no other witness saw Andrew running or being disorderly at the time Clark seized him. The District Court also ignored Eleventh Circuit precedent holding probable cause to believe **some** persons have committed an offense (i.e., on a "chaotic and crowded midway") does not constitute probable cause to seize **all** persons in the area and that probable cause must be particularized with respect to each person. Mr. Joseph is entitled to judgment as a matter of law, therefore, that Clark lacked probable cause to seize and detain Andrew and that Clark therefore did so in violation of Andrew's Fourth Amendment rights.

## V.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Mr. Joseph Is Entitled to Judgment as a Matter of Law that Clark Lacked Probable Cause to Seize Andrew

The District Court Erred in Denying Mr. Joseph's Motion for Judgment as a Matter of Law and Motion for a New Trial. The jury found Clark did not intentionally violate Andrew's right to be free from an unconstitutional seizure. *See*

Doc. 438. "[I]t is well established that a warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a § 1983 claim." *Joseph*, 2021 WL 4739608 at *3 (punctuation omitted) (quoting *Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016)). Since a warrantless seizure is constitutional only when it is effected with probable cause, the jury necessarily found Clark had probable cause to seize and detain Andrew. This finding contravenes the evidence presented at trial.

> Probable cause exists if the facts and circumstances within the officer's knowledge would cause a prudent person to believe, under the circumstances, that the suspect has committed, is committing, or is about to commit an offense. Arguable probable cause … exists where reasonable officers in the same circumstances and possessing the same knowledge could have believed that probable cause existed.

*Id*. (citation omitted) (quoting *Carter*, 821 F.3d at 1319, 1320). The evidence presented at trial was undisputed that Clark seized Andrew without a warrant and took him from the midway to the processing center and made the decision to eject Andrew from the fair. In ruling during trial on Mr. Joseph's oral motion for judgment as a matter of law, the District Court held, "there is ample evidence and evidence from which no reasonable juror could determine otherwise that [Clark] is the only officer who detained [Andrew] on the fair property and the only officer who took him from the midway …." Doc. 459 at 104:1-4. Clark expressly stipulated to this fact before trial. *See* Doc. 335 at 11 ("[Andrew] was detained by … Clark"; "[Andrew] was taken by Corporal Clark from the midway of the fair to a processing

14

area run by HCSO").  Thus, the seizure element of Mr. Joseph's Section 1983 claim against Clark is established.

In its Order denying Mr. Joseph's Renewed Motion for Judgment as a Matter of Law, the District Court concluded Clark had probable cause to believe Andrew committed the offense of "trespass" under Fla. Stat. § 616.185(1)(a), which defines the offense as "committing any act that disrupts the orderly conduct of any authorized activity of the fair association in charge, or its lessees, licensees, or the general public on those grounds or facilities …."  Doc. 461 at 7-8.  The District Court cited "circumstantial evidence … that could have supported the jury's finding by [a] preponderance of the evidence that Clark had probable cause [to] seize Andrew on the Midway for a suspected violation of Fla. Stat. § 616.185."  *Id*. at 8-9.  The circumstantial evidence to which the District Court pointed, however, amounts to no "more than a mere scintilla of evidence" and cannot support a reasonable jury's verdict.  *Levin*, 303 Fed. Appx. at 850.

The District Court held the jury's verdict is supported by Deputy Echenique's handwritten statement on Andrew's ejectment form—"running through the midway causing disorderly conduct."  Doc. 461 at 9.  As discussed above, Echenique never saw Andrew running through the midway or causing disorderly conduct; he wrote that on Andrew's ejectment form at Clark's instruction.  *See* Doc. 453 at 170:7-16.  And Clark does not recall instructing Echenique to fill out Andrew's ejection form,

let alone the factual underpinning for the legal conclusion of "disorderly conduct," and he does not recall Andrew or anything Andrew did at all from that night. *See id.* at 99:23-24, 103:4-104:2, 115:16-19, 129:11-20, 145:14-21. The sole witness who testified regarding Andrew's conduct said he was "walking." Additionally, as discussed below, the evidence at trial showed that merely running would not have amounted to "disorderly conduct" or a discharge offense from the fair. *See* Doc. 453 at 128:11-129:1, 130:15-19, 173:7-9. Neither the District Court nor Clark can say what conduct justified his detention.

Moreover, the District Court did not consider this Court's precedent holding probable cause cannot be based on Clark's conclusory statement that Andrew committed the offense Echenique later wrote on the ejectment form. *See Luke v. Gulley*, 50 F.4th 90, 96 (11th Cir. 2022) (holding detective's conclusory statement that plaintiff perpetrated offense described in affidavit did not support existence of probable cause for arrest) (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 (1971) (holding probable cause cannot be based on officer's conclusion that individual perpetrated offense described)); *Wallace v. Smith*, 297 Fed. Appx. 915, 916 (11th Cir. 2008) (holding "arrest warrant affidavit contain[ing] only a conclusory assertion that Wallace committed the offense described therein … was insufficient to support an independent assessment of probable cause"); *Garmon v. Lumpkin County*, 878 F.2d 1406, 1409 (11th Cir. 1989) (holding "affidavit

contain[ing] nothing but the investigator's conclusion that Mrs. Garmon had committed the crime" was insufficient to establish probable cause).[4] These cases are precisely on point and require reversal here.

The District Court also disregarded case law establishing Clark lacked even arguable probable cause to seize Andrew because Clark had no authority under Florida law to seize him. "[A]n officer is authorized to make a warrantless arrest for a misdemeanor only when it is committed in the officer's presence."[5] *Lu Jing v. State*, 316 So. 3d 724, 730 (Fla. 4th DCA 2021) (citing Fla. Stat. § 901.15(1)) ("Section 901.15(1)'s 'misdemeanor presence' requirement applies to warrantless arrests for misdemeanor trespass"). "To comply with [§ 901.15(1)], the 'arresting officer must have a substantial reason at the time of the warrantless misdemeanor arrest to believe from his observation and evidence at the point of arrest that the person ***was then and there*** committing a misdemeanor in his presence.'" *Id*. (emphasis in original) (quoting *State v. McCormack*, 517 So. 2d 73, 74 (Fla. 3d DCA

---

[4] While these cases involve officers' conclusory statements made in the warrant application process and not in connection with a warrantless arrest, "the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment." *Whiteley*, 401 U.S. at 566. The contrary "proposition has been consistently rejected by [the Supreme] Court." *Id*.

[5] A violation of Fla. Stat. § 616.185(1)(a) is a misdemeanor. *See* Fla. Stat. § 616.185(2).

1987)); *see also Bezzaz v. Moore*, No. 6:21-cv-528-JA-DAB, 2022 WL 4290709, *6 (M.D. Fla. Sept. 16, 2022) (citing § 901.15(1) and holding officer has at least arguable probable cause to arrest if person commits misdemeanor or other offense in officer's presence). HCSO Master Sergeant Todd Anthony confirmed this at trial – "A law enforcement officer would have to witness a violation of law in order to affect a detainment of some sort" at the fair. Doc. 454 at 96:24-97:1, 97:24-98:2.

No evidence was presented showing Clark or any other deputy observed Andrew running on the midway, being disorderly, or disrupting the orderly conduct of the fair, or providing any factual basis whatsoever for Echenique's conclusory assertion on the ejectment form. No evidence was presented to the jury, therefore, that Clark had any reason, much less a "substantial reason," to believe Andrew was violating any law.

The District Court nevertheless held there was evidence "corroborating that the conduct described in the ejection form was more likely than not what Clark witnessed on the Midway." Doc. 461 at 9. The scintilla of evidence to which the District Court points, however, does not support its conclusion that Clark "more likely than not" saw Andrew "running through the midway causing disorderly conduct."

Specifically, the District Court pointed to the testimony of Jordan Porrino that she saw Andrew running after his friends whom HCSO deputies had seized. *See id.*

at 9-10.  Porrino testified she saw Andrew running but then lost sight of him because she had turned around and went back to her other friends.  *See* Doc. 458 at 125:24-126:5; 129:9-12.  Porrino further testified she never saw Andrew interact with HCSO deputies that night and she never saw Andrew do anything that was riling up a crowd, unruly, or disorderly.  *See id.* at 131:20-22, 132:6-11, 132:25-133:10.

Again, for Clark to have had probable cause to seize Andrew, **Clark** must have seen Andrew running on the midway *and* causing a disturbance at the time of his detention – the fact Porrino saw Andrew running at some point does not make that required fact more likely than not, especially since Porrino did not see Andrew running near any deputies or have any interaction with deputies and she does not know of anything Andrew did that might have drawn deputies' attention. Moreover, Porrino's testimony shows that Clark **did not** seize Andrew for this reason, because Porrino testified she saw no interaction between Andrew and Clark.  No evidence was presented at trial that Clark saw what Porrino saw or that he saw Andrew running at all.  There was likewise no evidence presented establishing the lapse of time between Porrino's observations and Clark's interaction with Andrew. In other words, there is no evidence Andrew was running **at the time** Clark seized him and **in Clark's presence**, which must have been the case in order for Clark to have had probable cause to seize him for misdemeanor conduct.  Porrino's testimony is simply not pertinent to the probable cause analysis.

Equally irrelevant is the testimony of witnesses that other attendees—but not Andrew—were running or being disorderly. The District Court pointed to the testimony of Sergeant Bell that he detained Corey Thornton for running in the middle of a group of people on the midway and Corey's testimony that he and Andrew were together all night as supporting the jury's finding that Andrew more likely than not was running in the crowd with Corey when Clark seized him. *See* Doc. 461 at 10-11. But again, no one saw Andrew doing anything that justified his detention. If the jury did make such a finding, it is not a logical inference from Bell's and Corey's testimony; rather, it is a textbook syllogistic fallacy – a false presumption devoid of evidentiary support.[6] Such a finding is refuted by Bell's testimony that he never saw Andrew and by Corey's testimony that Andrew walked, and did not run, up to the deputies who had his friends in custody. *See* Doc. 456 at 78:9-10, 78:19, 81:16-21, 144:15-18; Doc. 458 at 48:18-20, 55:2-11. Corey was the *only eyewitness* to Andrew's conduct in picking up Robert's cap and approaching the deputies who had custody of their friends, and Corey's testimony was repeated and consistent that Andrew was *walking* at this time, not running.

---

[6] This inference is no more logical than if Bell had seen Corey eating a funnel cake – the fact Andrew and Corey were together all night does not support the inference that Andrew also was eating a funnel cake. It is equally likely Andrew was eating a snow cone, or that Andrew was not eating at all.

Reviewing the evidence to which the District Court pointed as supporting the jury's verdict and what Echenique wrote on Andrew's ejection form, Porrino testified she saw Andrew running, but not anywhere near deputies; Bell testified he saw Corey running, but he never saw Andrew; and Corey testified Andrew was walking when they approached the deputies to return Robert's hat. This evidence does not show it "was more likely than not" that **Clark saw** Andrew running and being disorderly on the midway; it shows, at a minimum, that it is just as likely Andrew was ***not*** running or being disorderly.

Even if Andrew ran toward Robert and the deputies detaining him (for which there is no evidentiary support), the evidence presented at trial, including Clark's own testimony, was undisputed that running on the midway at the fair without more did not violate any law or fair rule and did not give deputies probable cause to seize and detain anyone. Master Sergeant Todd Anthony, who was in charge of staffing and security planning for Student Day, testified running on the midway by itself did not constitute disorderly conduct and that deputies would not have probable cause to seize or detain someone who was just running on the midway. *See* Doc. 454 at 98:3-20. Deputy Echenique likewise testified running on the midway is not disorderly conduct. *See* Doc. 453 at 173:7-9. Clark also testified running on the midway of the fair did not violate any law or fair rule and that, for running to be disorderly conduct, Andrew had to have been "bumping into people" or "causing …

21

other problems," but Clark does not recall Andrew doing any such thing. *See id.* at 128:11-129:1, 130:15-19. Likewise, the ejection form written by Echenique at Clark's instruction contains no reference to "bumping into people" or "causing … other problems." In fact, it is undisputed Andrew was not "bumping into people" or "causing any other problems" at the time Clark seized him. *See* Doc. 453 at 129:11-16; Doc. 458 at 131:6-15, 132:25-133:10. Thus, even if Andrew was "running" at the time of Clark's detention, Andrew was not "causing a disturbance" at all. There is no evidence to the contrary. The District Court held the jury's finding that Clark had probable cause to believe Andrew was being disorderly, and therefore to seize and detain Andrew, is supported by evidence showing there were "large crowds and general chaos on the Midway that night" and that running under such circumstances was disorderly. Doc. 461 at 11-12. Again, however, no evidence was presented at trial showing Andrew was even running *at the time Clark seized him*.

Moreover, it is well-established in the Eleventh Circuit that having probable cause to seize persons who were in fact running or being disorderly or creating "general chaos" does not establish probable cause to seize every person in the vicinity. *See Joseph*, 2021 WL 4739608 at *3 ("[T]he law was clearly established in February of 2014 that mere proximity to one who is suspected of (or has committed) an offense does not provide probable cause or arguable probable cause for a detention.").

> [A] search or seizure of a person must be supported by probable cause **particularized with respect to that person**. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Swint v. City of Wadley*, 51 F.3d 988, 997 (11th Cir. 1995) (emphasis added) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). "Probable cause to arrest one suspect, and even probable cause to believe that a number of other or unidentified people had [committed an offense does] not give the officers carte blanche to seize everyone who happened to be in the [area]." *Id*.

The fact there were "large crowds and general chaos on the Midway that night," therefore, does not support the conclusion Clark and the other deputies had probable cause to seize anyone and everyone in their vicinity. And the only evidence "particularized" to what Andrew was doing at the time Clark seized him is Corey's eyewitness testimony that Andrew was **walking** when they approached the deputies to return Robert's hat. So even if running on the midway could have constituted disorderly conduct under the circumstances, the only eyewitness to Andrew's actions leading up to and at the time Clark seized him established Andrew was not running or being disorderly. Accordingly, no reasonable officer could have believed probable cause existed to seize Andrew for "committing an[] act that disrupts the orderly conduct of any authorized activity of the fair" in violation of Fla. Stat. § 616.185(1)(a).

Thus, the District Court erred in concluding the evidence was legally sufficient to support the jury's verdict; the evidence ***did not*** show a likelihood that Andrew was running or that Clark saw him running, and the evidence certainly did not show that running "under the circumstances" gave Clark and the other deputies "carte blanche to seize everyone who happened to be in the [area]." Doc. 461 at 11; *Swint*, 51 F.3d at 997.

The District Court's conclusion also disregards case law holding the determination whether probable cause exists to seize a person may not be left to a single officer's unfettered, ad hoc, on-the-spot discretion. The objective standard by which the existence of probable cause is adjudged negates the constitutionality of a seizure based on an officer's subjective assessment of whether he has probable cause to believe an offense has occurred. *See Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010) (in determining whether an arrest was supported by probable cause, "[t]he standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs"). "The point of the Fourth Amendment, which often is not grasped by zealous officers," is to protect persons from seizures made "only in the discretion of police officers." *Johnson v. United States*, 333 U.S. 10, 13-14 (1948); *see also Wong Sun v. United States*, 371 U.S. 471, 482 & n.9 (1963) ("To hold that an officer may act in his own, unchecked discretion upon information too vague and from too untested a source to permit a judicial officer to accept it as

probable cause for an arrest warrant, would subvert th[e] fundamental policy [of the Fourth Amendment].”); *Gray v. Kohl*, 568 F. Supp. 2d 1378, 1391 (S.D. Fla. 2008) (recognizing police officers should not be vested with “unbridled discretion” to determine whether suspect has violated a law and probable cause exists to arrest).

Clark and Sergeant Bell testified they had “discretion” to determine whether running (or “misbehaving”) on the midway constituted disorderly conduct or gave them probable cause to seize a child from the midway and eject them from the fair, and they could ***arbitrarily*** make that decision themselves on the spot. *See* Doc. 453 at 84:5-16; Doc. 458 at 30:15-19, 34:22-35:1, 52:25-53:10. A finding of probable cause cannot be based on Clark’s ***subjective*** discretionary assessment – for which there is no evidentiary support – that Andrew was “running through the midway causing disorderly conduct.”

This Court previously held, “for summary judgment purposes Andrew was not, in any conceivable way, committing a crime, or even breaking any rule.” *Joseph*, 2021 WL 4739608 at *3. Nothing has changed. The evidence presented at trial supports the same conclusion and was legally insufficient to support a reasonable jury’s finding that Clark had probable cause to seize and detain Andrew. Accordingly, the District Court erred in denying Mr. Joseph’s Motion for Judgment as a Matter of Law.

## B. Mr. Joseph Is Entitled to a New Trial on Issues Remaining as to His Section 1983 Claim Against Clark

In addition to granting Mr. Joseph's Motion for Judgment as a Matter of Law, the District Court should have granted a new trial on several issues remaining as to Mr. Joseph's Section 1983 claim against Clark: (1) whether Clark's violation of Andrew's Fourth Amendment rights proximately caused Andrew's death; (2) whether Mr. Joseph is entitled to an award of compensatory damages for Clark's violation of Andrew's Fourth Amendment rights; (3) whether Clark acted with malice or reckless indifference to Andrew's Fourth Amendment rights such that Mr. Joseph is entitled to an award of punitive damages and, if so, the amount of those damages; and (4) whether Mr. Joseph is entitled to an award of his attorneys' fees pursuant to 42 U.S.C. § 1988(b).

Rule 50(b)(2) authorized the District Court, in ruling on Mr. Joseph's Rule 50 Motion, to order a new trial. A new trial is especially warranted here because, if this Court reverses the District Court's ruling that Clark had probable cause, then Mr. Joseph's Section 1983 claim is revived. The jury, however, did not decide the other issues related to the Section 1983 claim, including whether Clark's violation of Andrew's Fourth Amendment rights proximately caused Andrew's death and whether Mr. Joseph is entitled to compensatory and punitive damages. And the District Court did not decide whether Mr. Joseph is entitled to an award of his

attorneys' fees.  A new trial is necessary, therefore, to prevent a miscarriage of justice and to fully resolve Mr. Joseph's Section 1983 claim against Clark.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the District Court's order denying Plaintiff's Motion for Judgment as a Matter of Law and Motion for New Trial.

Respectfully submitted this 19th day of July, 2023.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914
canulewicz@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 868-2100
Facsimile: (404) 868-2010

Guy Bennett Rubin
Florida Bar No. 691305
grubin@rubinandrubin.com
tnorbraten@rubinandrubin.com
**Rubin & Rubin**
P.O. Box 395
Stuart, Florida 34995
Telephone: (772) 283-2004
Facsimile: (772) 283-2009

*Attorneys for Appellant Andrew Joseph, Jr.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 6644 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The type size and style used in this brief are font size 14, Times New Roman Style.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing **Brief of Appellant** with the

Clerk of Court for the United States Court of Appeals for the Eleventh Circuit using

the CM/ECF system, which automatically sends email notification of such filing to

the following attorneys of record, on this 19th day of July, 2023.

April Kirsheman
Hillsborough County Sheriff's Office
2008 East 8th Avenue
Post Office Box 3371
Tampa, Florida 33601

Robert M. Fulton
Robert A. Shimberg
Marie A. Borland
Hill Ward & Henderson, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 3361-2231

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914